NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3951
_____

KALILAH BRANTLEY,
Appellant

v.

KEYE A. WYSOCKI, Individually and in his capacity as Corporal for the
Pennsylvania State Police; KEITH HAGAN, Individually and in his capacity
as trooper for the Pennsylvania State Police; RENEE BURROWS, Individually
and in her official capacity as shift manager for American Airlines Group, Inc.;
AMERICAN AIRLINES GROUP INC, S/I/I/T US Airways Group, Inc.;
JOHN DOES 1-10
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(E.D. Pa. No. 2-14-cv-04185)
District Judge: Honorable Mark A. Kearney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 16, 2016
_____

Before: CHAGARES, GREENAWAY, JR. and RESTREPO, *Circuit Judges*.

(Filed: October 26, 2016)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant Kalilah Brantley filed this civil rights action under 42 U.S.C. § 1983. Brantley alleges two claims against Appellee Pennsylvania State Police Corporal Keye Wysocki[1]—malicious prosecution in violation of the Fourth Amendment and retaliatory prosecution in violation of her First Amendment right to free speech. The District Court dismissed the malicious prosecution claim on Rule 12(b)(6) grounds and granted summary judgment for Wysocki on the First Amendment claim on qualified immunity grounds.[2] We will affirm.

**I**

Brantley worked for a private employer at the Philadelphia International Airport, where she was supervised by Rene Burrows. Around Christmas 2010, the two had a dispute over mandatory overtime. Brantley alleged that Burrows was violating union overtime policy. Burrows denied this. Burrows, furthermore, believed that Brantley had committed a workplace infraction by clocking out of a mandatory overtime shift without authorization.

On December 30, 2010, Brantley, Burrows, a union representative and another employee held a heated "coaching" meeting in an airport conference room to discuss Brantley's alleged infraction. App. 548. Brantley's cell phone was on the table during

---

[1] Brantley previously raised claims against other defendants dismissed by the District Court. Her appeal is limited to her claims against Wysocki.

[2] Brantley also alleged a malicious prosecution claim under Pennsylvania state law, but concedes that this claim is barred by Pennsylvania's sovereign immunity statute, 1 Pa. Cons. Stat. § 2310. *See also* 42 Pa. Cons. Stat. § 8522 (exceptions to sovereign immunity inapplicable).

the meeting. Midway through the meeting, Burrows became suspicious that Brantley was recording the meeting on her cell phone. Burrows confronted Brantley, who admitted that she was recording.

Sometime after the December 30, 2010 meeting, Brantley posted a public letter in an employee break room criticizing Burrows. Burrows was admittedly "disgusted" by the letter. App. 246.

Burrows spoke with her husband, a police officer in New Jersey, and with a corporate security officer. Based upon these conversations, she concluded that Brantley had violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa. Cons. Stat. § 5703. Burrows enlisted the aid of Appellee Wysocki, who often worked at the airport. Burrows told Wysocki that Brantley had illegally recorded the "coaching" meeting.

On January 18, 2011, Wysocki accompanied Burrows to a Philadelphia Police Department station inside the airport, where Burrows filed a complaint against Brantley. The police, however, brushed off Burrows by telling her to obtain a copy of the recording herself. Burrows told Wysocki, who thought the officer who took her complaint was being "lazy." App. 307, 309. Wysocki began to investigate Burrows' complaint himself, with permission from his supervisor and a deputy district attorney.

On February 1, 2011, Wysocki interviewed Burrows at the airport. Burrows told Wysocki that Brantley recorded the "coaching" meeting without her knowledge. She told him that she ended the meeting as soon as she learned that Brantley was recording it. She also told him that she reported "the possible recording" to a supervisor. App. 534.

3

On February 8, 2011, Wysocki confronted Brantley at work and demanded her cell phone. Wysocki admittedly told Brantley that if she did not give him the phone, he would "physically take it from [her] hand." App. 328. Brantley complied. Wysocki escorted her into a break room where he copied the recording onto his own phone. Brantley admitted to Wysocki that she had recorded Burrows without her knowledge or consent, but maintained that this was not illegal or against company policy.

Wysocki personally signed a criminal complaint, charging Brantley with a Wiretap Act violation. Brantley received a summons by mail and was prosecuted in state court. She filed a suppression motion. The trial court granted the motion and the Superior Court affirmed on interlocutory appeal. *Commonwealth v. Brantley*, No. 376 EDA 2012, 2013 WL 11288850 (Pa. Super. Ct. Jan. 11, 2013). The Commonwealth nolle prossed the case.

This civil rights action followed. The District Court dismissed Brantley's Fourth Amendment malicious prosecution claim under Federal Rule of Civil Procedure 12(b)(6). The District Court granted summary judgment for Wysocki on the First Amendment retaliatory prosecution claim on qualified immunity grounds.

## II

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the grant of a motion to dismiss under Rule 12(b)(6). *Kaymark v. Bank of Am.*, 783 F.3d 168, 174 (3d Cir. 2015). We accept as true all well-pled factual allegations and construe all inferences in the light most favorable to

4

plaintiff. *Id.* We also exercise plenary review over a grant of a motion for summary judgment. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007). We will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may affirm on any grounds supported by the record. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc).

## III

### A

The District Court dismissed Brantley's Fourth Amendment malicious prosecution claim under Rule 12(b)(6). Brantley's notice of appeal does not specify that she is appealing this order. However, she argues the merits of her Fourth Amendment malicious prosecution claim in her brief. Therefore, we must first address the scope of our jurisdiction.

Rule 3(c) of the Federal Rules of Appellate Procedure requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Nevertheless, we construe notices of appeal liberally. *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d Cir. 1998). We have repeatedly recognized an exception to Rule 3 that allows us to "review earlier non-final orders not specified in the notice of appeal where (1) there is a connection between the specified and unspecified order; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 311 n.3 (3d Cir. 2001); *see also Polonski*, 137

5

F.3d at 144. As these requirements are met here, we will review the District Court's order dismissing Brantley's Fourth Amendment malicious prosecution claim.

A Fourth Amendment malicious prosecution claim requires a plaintiff to plead these elements:

> (1) the defendant[] initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler*, 564 F.3d at 186 (quotation marks omitted) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). The District Court properly dismissed Brantley's Fourth Amendment malicious prosecution claim because she did not allege the fifth element, a deprivation of liberty.

"[P]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure" for a malicious prosecution claim. *Black v. Montgomery Cty.*, No. 15-3399, 2016 WL 4525230, at *6 (3d Cir. Aug. 30, 2016) (quoting *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005)). To determine whether there was a deprivation of liberty, we may consider, *inter alia*, whether a plaintiff was incarcerated, was detained in the police station, posted bond, was required to contact pretrial services, was prohibited from travelling or was required to travel to attend court. *Id.* at *6-7.

Brantley's Second Amended Complaint alleges none of these facts. Rather, she alleges only that she "received a police summons by mail" and that the trial court held a

6

two-day suppression hearing.  App. 50.  These facts alone do not amount to a deprivation of liberty.  *DiBella*, 407 F.3d at 603.  Thus, the District Court properly dismissed the Fourth Amendment malicious prosecution claim.

**B**

Brantley also raises a claim of retaliatory prosecution in violation of her First Amendment right to free speech.  The District Court granted summary judgment for Wysocki on qualified immunity grounds.  The District Court found that there was a constitutional violation, but that the right was not clearly established.  We will affirm on alternative grounds, finding no constitutional violation and not reaching the question whether the right was clearly established.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  *Id.* at 741 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As is within our discretion, we address the first prong of the qualified immunity analysis, whether there was a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). This is the most "fair and efficient disposition" of this case. *Id.*[3]

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted). To establish a First Amendment retaliation claim, a plaintiff "'must prove (1) that [s]he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)). Wysocki argues that summary judgment was proper because Brantley failed to prove causation.

Causation in this context is defined as "but-for causation, without which the adverse action would not have been taken." *Hartman*, 547 U.S. at 260. Ordinarily, "upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of (such as firing the employee)." *Id.* However, under *Hartman*, where the plaintiff alleges that the particular act of retaliation is *criminal prosecution*, causation requires a special method of proof—the plaintiff must plead and prove the absence of probable cause. *Id.* at 265-66. This requirement applies whether the

---

[3] For reasons of constitutional avoidance, we will often begin by determining whether a right was clearly established, although beginning with the constitutional question was more efficient here. *Camreta v. Greene*, 563 U.S. 692, 705-07 (2011).

defendant induced another person to file charges, as in *Hartman*, or initiated the prosecution himself, as Wysocki did. *See Miller v. Mitchell*, 598 F.3d 139, 154 (3d Cir. 2010).

In its analysis, the District Court did not address the *Hartman* requirement that Brantley prove the absence of probable cause. Rather, the District Court concluded that a jury could find causation based upon the "temporal proximity" between Brantley's "protests" regarding union policy and her criminal prosecution. App. 11. We exercise our discretion to apply *Hartman* for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). We turn then to the ultimate issue—whether Brantley has proven for summary judgment purposes that Wysocki arrested her without probable cause.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). In applying "this practical and common-sensical standard, we have consistently looked to the totality of the circumstances." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013). We "reject[] rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).

The existence of probable case is ordinarily a factual issue. *Halsey v. Pfeiffer*, 750 F.3d 273, 300 (3d Cir. 2014). Summary judgment is not appropriate if there are factual disputes "bearing on the issue or if 'reasonable minds could differ'" as to whether there was probable cause. *Id.* (citation omitted). Conversely, we may grant summary

9

judgment if "no genuine issue of material fact exists as to whether" there was probable cause. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

In Brantley's case, the statute at issue is Section 5703 of the Wiretap Act, which provides: "a person is guilty of a felony of the third degree if he: . . . intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication . . . ." 18 Pa. Cons. Stat. § 5703(1). An oral communication is "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication." 18 Pa. Cons. Stat. § 5702.

Under Pennsylvania law, a Wiretap Act violation for interception of an oral communication requires proof:

> (1) that [the claimant] engaged in a communication; (2) that [s]he possessed an expectation that the communication would not be intercepted; (3) that [her] expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so.

*Kelly v. Carlisle*, 622 F.3d 248, 257 (3d Cir. 2010) (quoting *Agnew v. Dupler*, 717 A.2d 519, 522 (Pa. 1998)).

We examine the expectation of non-interception "in accordance with the principles surrounding the right of privacy." *Agnew*, 717 A.2d at 523. We ask whether the claimant had an expectation of privacy and "whether that expectation is one that society is prepared to recognize as reasonable." *Id.* The Pennsylvania Supreme Court has relied

10

upon several facts "belying" a justifiable expectation of non-interception. *Kelly*, 622

F.3d at 258. These include that "'oral interrogations of suspects by the police are

generally recorded'"; that a participant is taking notes; that third parties are present and

that others can overhear the conversation. *Id.* at 258 (quoting *Commonwealth v. Henlen*,

564 A.2d 905, 906 (Pa. 1989)); *id.* at 257 (citing *Agnew*, 717 A.2d at 524).

In the instant case, there was probable cause to conclude that Brantley violated the

Wiretap Act. Burrows told Wysocki that Brantley recorded the "coaching" meeting

without her knowledge. She told him that she ended the meeting immediately after she

learned that Brantley was recording it.[4] She also told him that she reported the recording

to a supervisor. There is no evidence that other "coaching" meetings at Brantley's

private employer were ever recorded. Wysocki also conducted a separate interview of

Brantley, who admitted that she recorded the meeting without the knowledge or consent

of Burrows. In addition, Wysocki obtained a copy of the recording.

In response, Brantley contends that there was no probable cause because Wysocki

lacked evidence that Burrows had a "justifiable" expectation of non-interception. *Kelly*,

622 F.3d at 257. She points out that other individuals were at the "coaching" meeting

and that her cell phone was visible on the table. Although Brantley does not argue this

point, we also acknowledge that Brantley was taking notes. These facts could describe

_____

[4] There is some evidence that the meeting continued after Brantley told Burrows that she was recording. However, this factual dispute is not material to the probable cause determination because the information was not available to Wysocki. *See Harris*, 133 S. Ct. at 1055. Wysocki interviewed Burrows, who told him that the meeting ended immediately after Brantley admitted to recording it. Wysocki also interviewed Brantley, who did not contradict this statement.

11

many workplace meetings. Alone, they do not undermine our conclusion that there was probable cause to arrest Brantley for recording the "coaching" meeting. We emphasize that this arrest took place in 2010, amidst the recording technology of that day. We also emphasize that "we are concerned here only with the question of probable cause, not [Brantley]'s guilt or innocence." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). Thus, the District Court properly granted summary judgment for Wysocki on the First Amendment retaliatory prosecution claim.

**IV**

For the foregoing reasons, the judgment of the District Court is affirmed.