# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 9, 2018          Decided June 1, 2018

No. 17-5128

MICHAEL J. DAUGHERTY AND LABMD, INC.,
APPELLEES

v.

ALAIN H. SHEER, IN HIS INDIVIDUAL CAPACITY AND RUTH T.
YODAIKEN, IN HER INDIVIDUAL CAPACITY,
APPELLANTS

DOES 1-10, IN THEIR INDIVIDUAL CAPACITIES,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-02034)

---

*Tyce R. Walters*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Jessie K. Liu*, U.S. Attorney, and *Mark B. Stern*, Attorney.

*James W. Hawkins* argued the cause and filed the brief for appellees.

*Patrick J. Massari* and *Michael Pepson* were on the brief for *amicus curiae* Cause of Action Institute in support of plaintiffs-appellees.

Before: PILLARD and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: This case requires us to decide whether two Federal Trade Commission attorneys are immune from suit for their conduct during an enforcement action against a medical-records company after the company's CEO publicly criticized the FTC about their investigation, where the company's data-security practices made patient records available over public file-sharing. Because "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law," *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted), the answer is yes. Even if the FTC attorneys sought to retaliate for the public criticism, their actions do not violate any clearly established right absent plausible allegations that their motive was the but-for cause of the Commission's enforcement action.

**I.**

LabMD, Inc. is a small medical-services company in Fulton County, Georgia, owned by Michael Daugherty.[1] LabMD maintained personal information about thousands of patients, including information covered by the Health

---

[1] This factual background relies on the allegations in the Complaint: we assume the truth of these allegations when reviewing the denial of a motion to dismiss. *Vila v. Inter-Am. Inv., Corp.*, 570 F.3d 274, 278 (D.C. Cir. 2009).

Insurance Portability and Accountability Act of 1996 ("HIPAA").

In May 2008, data-security company Tiversa Holding Corporation notified LabMD that Tiversa located a LabMD PDF file with personal information about 9,300 patients on LimeWire, a peer-to-peer file-sharing application. Tiversa was able to access and download this file, known as the "1718 File," through its data-monitoring technologies that run a prodigious number of searches across file-sharing networks. Tiversa also informed LabMD that the 1718 File had "spread," meaning that other users searched for and downloaded the file on various peer-to-peer networks. LabMD determined that the 1718 File was on LimeWire because the application was installed on a LabMD billing computer, and the company removed LimeWire immediately. LabMD employees searched for the 1718 File on other networks, but did not find it. Plaintiffs-Appellees allege that Tiversa's actions were a sales tactic to attempt to persuade LabMD to purchase Tiversa's data-breach-remediation services.

Enter the FTC. On January 19, 2010, LabMD CEO Daugherty received a letter from Alain Sheer, an FTC enforcement attorney, informing LabMD that the FTC was investigating LabMD's information-security practices, because "[a]ccording to information [they] ha[d] received, a computer file (or files) from your computer network is available to users on a peer-to-peer file sharing ('P2P') network." Compl. ¶ 115. According to Plaintiffs-Appellees, Sheer knew about the 1718 File only because Tiversa contacted the FTC to suggest an investigation, another Tiversa strategy for pressuring companies to retain their services.

Over the next three and a half years, FTC attorneys Sheer and Ruth Yodaiken investigated Daugherty and LabMD

regarding the company's data-security practices that allowed the 1718 File to be available on LimeWire. During this period, Daugherty publicly criticized the FTC, Sheer, and Yodaiken regarding the conduct of the investigation. On September 7, 2012, the Atlanta Business Chronicle quoted Daugherty describing the FTC's investigation as "a fishing expedition" that was "beating up on small business." Compl. ¶ 128. An FTC paralegal downloaded the article and sent it to Sheer, Yodaiken, and others not named. *Id.* ¶ 129. Daugherty and LabMD allege that "[a]fter reading Daugherty's quote, Sheer and Yodaiken ramped up their investigative efforts against Daugherty and LabMD." *Id.* ¶ 130. However, it is not alleged what this "ramp[ing] up" entailed. On July 19, 2013, Daugherty posted on the internet a "trailer" for his book, *The Devil Inside the Beltway*, which details his experience with the FTC investigation into LabMD. Three days later, Sheer informed LabMD's attorney that the investigation team had recommended an enforcement action against LabMD to the Commission, which would make the decision about whether to bring such an action. The Commission voted unanimously to do so on August 28, 2013: the complaint against LabMD alleged that it failed to provide appropriate security for patient information, in violation of Section 5 of the Federal Trade Commission Act ("FTCA").

**II.**

LabMD continues to defend against the FTC enforcement action, now in federal court. LabMD also filed several cases attacking those proceedings. Each of its three lawsuits seeking to enjoin the FTC has been dismissed. *See LabMD, Inc. v. FTC*, No. 14-cv-810 (N.D. Ga. May 12, 2014); *LabMD, Inc. v. FTC*, No. 13-cv-1787 (D.D.C. Feb. 19, 2014); *LabMD, Inc. v. FTC*, No. 13-15267 (11th Cir. Feb. 18, 2014). This suit for damages against Sheer, Yodaiken, and another FTC attorney in

their personal capacities is LabMD's fourth offensive foray in response to the FTC's enforcement effort.

Defendants moved to dismiss, and the District Court granted the motion with respect to all but the claim that the FTC attorneys Sheer and Yodaiken retaliated against LabMD and Daugherty based on Daugherty's exercise of his First Amendment rights to publicly criticize the government. *See Daugherty v. Sheer*, 248 F. Supp. 3d 272 (D.D.C. 2017). For this particular claim, the District Court framed the allegations as "claiming that Defendants increased the intensity of the investigation in 2012 and 2013, and later in 2013 elevated the matter to an enforcement proceeding following additional public criticism by Daugherty." *Id.* at 285. The District Court concluded that no special factors or alternative remedial scheme precluded a *Bivens* remedy for Plaintiffs-Appellees' First Amendment claims and denied Defendants' qualified-immunity defenses, reasoning that

> Plaintiffs' First Amendment rights to criticize the actions of the federal government without fear of government retaliation are as clearly established as can be, and a serious escalation of an agency's investigation or enforcement against Plaintiffs for publicly criticizing the agency would appear to violate that clearly established constitutional right.

*Id.* at 290.

Sheer and Yodaiken appealed. We review de novo, and "in reviewing the denial of the motion to dismiss, we take the allegations of the complaint as true." *Vila*, 570 F.3d at 278. "In assessing a claim of qualified immunity, the facts must be taken 'in the light most favorable to the party asserting the injury.'" *Corrigan v. Dist. of Columbia*, 841 F.3d 1022, 1035

(D.C. Cir. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

## III.

"Qualified immunity depends upon the answers to two questions: (1) Did the officer's conduct violate a constitutional or statutory right? If so, (2) was that right clearly established at the time of the violation?" *Jones v. Kirchner*, 835 F.3d 74, 84 (D.C. Cir. 2016). Court have discretion to answer these questions in either order. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Accordingly, "courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle*, 566 U.S. at 664 (quoting *al-Kidd*, 563 U.S. at 741). This standard does not "require a case directly on point." *al-Kidd*, 563 U.S. at 741. Regardless of whether a court expressly has declared certain conduct unlawful, a government official is not entitled to qualified immunity where "every 'reasonable official would have understood that what he is doing violates th[e] right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Accordingly, "we look to cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view – if there is one." *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (citation and quotation marks omitted). The proponent of a purported right has the "burden to show that the particular right in question . . . was clearly established" for qualified-immunity purposes. *Dukore v. Dist. of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015).

In assessing whether a right is clearly established, courts must mind the Supreme Court's admonishment "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. This means, for instance, that courts cannot rely on "[t]he general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment." *Id.* Similarly, in the First Amendment context, "the general right to be free from retaliation for one's speech" may be too broad a proposition, not sufficiently "particularized" to make out clearly established law. *Reichle*, 566 U.S. at 665. Again, the touchstone remains whether the "contours of the right are clear to a reasonable officer." *Id.* (quotation marks omitted).

## IV.

In their claim now on appeal, Daugherty and LabMD assert that Sheer and Yodaiken violated their rights by prosecuting an enforcement action in retaliation for Daugherty's speech, despite the undisputed data-security breach underlying the FTC's investigation and regardless of ultimate control over the decision to bring a complaint residing with the FTC board. Because no such right was clearly established, Sheer and Yodaiken are immune from this suit.

We first consider the scope of the retaliation that Plaintiffs-Appellees allege. As an initial matter, it is beyond dispute that the FTC enforcement action began long before Daugherty's speech upon which the alleged retaliation purportedly was based – in fact, Daugherty's statements were about the ongoing FTC investigation. Accordingly, we understand Plaintiffs-Appellees' arguments to allege retaliation through Sheer's and Yodaiken's conduct while investigating, recommending, and later prosecuting the FTC enforcement action – not the decision to instigate the investigation in the first place.

We next consider the appropriate level of generality for analyzing whether the right is clearly established. Daugherty and LabMD assert a First Amendment right to be free from the FTC ramping up its enforcement action after Daugherty publicly criticized the FTC. Plaintiffs-Appellees focus on their allegation that "not one single patient suffered harm due to any alleged disclosure of the 1718 file," Appellees' Br. 39, in an attempt to undercut the factual basis for the FTC's action. But this is unpersuasive in light of other facts that are undisputed: Daugherty and LabMD do not deny – nor could they – that the 1718 File was publicly available from a LabMD computer on LimeWire's peer-to-peer network, and that Tiversa was able to access and download the file over that system. The 1718 File contained confidential personal information about approximately 9,300 patients. While the Complaint casts LabMD as the "victim of inadvertent file sharing," Compl. ¶ 48, and Plaintiffs-Appellees argue at length that there was no consumer injury based on the availability of the 1718 File, Plaintiffs-Appellees' own characterization of the facts belies any implication that the FTC's enforcement action was specious. And while Plaintiffs-Appellees take issue with the relationship between Tiversa and the FTC, their allegations that the FTC investigated Tiversa's targets to gin up customers for Tiversa do not controvert the data-security issue underlying the FTC's investigation. Like the fact that the investigation began long before Daugherty's criticism of the FTC and its enforcement team, the undisputed factual basis for the FTC's enforcement action demonstrates a cause for that action – regardless of whether FTC staff also had retaliatory motive based on Daugherty's intervening speech. Our task, then, is to determine whether there is a clearly established right to be free from an enforcement action where retaliatory motive was allegedly present, but was not plausibly alleged to be the but-for cause of the enforcement.

Supreme Court precedent shows that there is no such clearly established right.  If anything, the leading cases cut the other way:  they show that retaliatory motive does not automatically imbue the conduct in question with an unconstitutional air, where the official's actions have a legitimate basis.  In *Crawford-El v. Britton*, the Supreme Court explained that "proof of an improper motive is not sufficient to establish a constitutional violation – there must also be evidence of causation," as well as clarity that the conduct in question violated a right.  523 U.S. 574, 593 (1998).  The Court reasoned that the causation element provides a check against the "serious problem" of spurious allegations of improper motive by government officials, notoriously "easy to allege and hard to disprove."  *Id.* at 584-85, 592-93.

The same principles found further purchase in *Hartman v. Moore*, where the Court concluded that an absence of probable cause has "powerful evidentiary significance" in any retaliatory-prosecution case and accordingly must be pleaded and proved by the plaintiff.  547 U.S. 250, 261 (2006).  The presence or absence of probable cause is especially critical where one official recommends prosecution to a different decision-maker because "the causal connection . . . is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another."  *Id.* at 262.  Although "showing an absence of probable cause may not be conclusive that the inducement [to prosecute] succeeded, and showing its presence does not guarantee that inducement was not the but-for fact in a prosecutor's decision," the question of a proper, alternative basis for a prosecution "will have high probative force" in determining whether an officer's retaliatory motive caused a constitutional injury.  *Id.* at 265.

Applying these concepts here, we conclude that Daugherty and LabMD have failed to allege that Sheer and Yodaiken violated any clearly established right. At core, the allegations relate that Sheer and Yodaiken continued an ongoing FTC investigation, based on an undisputed data breach of LabMD's records. Even if the FTC staff were motivated to retaliate against Daugherty and LabMD because of Daugherty's statements criticizing them, Plaintiffs-Appellees have not alleged that any such retaliatory animus actually caused the injury that they assert. They have not alleged that Sheer and Yodaiken retaliated in initiating the inquiry – to the contrary, Daugherty had not yet said the things that purportedly inspired the FTC staff's animosity. They do not contend that the FTC lacked any reason to believe that LabMD violated the FTCA – information about some 9,300 patients in the 1718 File was available publicly from a LabMD computer via LimeWire, although they dispute whether any consumers were harmed by that publication. And while they include a conclusory allegation that Sheer and Yodaiken "ramped up" their investigative efforts in response to Daugherty's public criticism, they nowhere allege causation to "bridge the gap" between that alleged retaliation and the Commission's unanimous vote to proceed with an enforcement action against LabMD. *See Hartman*, 547 U.S. at 263. With these layers of alternative causality separating Sheer's and Yodaiken's conduct from the effect on LabMD and Daugherty, the Defendants-Appellants' allegedly retaliatory conduct during the continuing investigation did not violate Daugherty's and LabMD's clearly established rights. Accordingly, Sheer and Yodaiken are entitled to qualified immunity and need not defend against this suit.

\*   \*   \*

Because the FTC enforcement action against LabMD had an alternative cause – the undisputed data-security breach by which the 1718 File was publicly available from a LabMD computer – the alleged actions by Sheer and Yodaiken did not violate Daugherty's or LabMD's clearly established rights, even assuming retaliatory motive. Sheer and Yodaiken accordingly are entitled to qualified immunity, and the District Court's decision concluding otherwise is REVERSED.