CLAY, Circuit Judge,
dissenting.
While I agree with the majority that there is insufficient evidence in the record to support Plaintiff Robert Kinkus’ (“Kinkus”) Fourth Amendment malicious prosecution claim, I do not share the majority’s view that Defendants, James Popp (“Popp”) and Gary Anderson (“Anderson”), should have been granted qualified immunity on Kinkus’ First Amendment retaliatory prosecution claim. I am also troubled by the majority’s sua sponte decision to reverse the district court’s grant of summary judgment to Kinkus on his municipal liability claim against the Village of York-ville (the “Village”), given that we lack jurisdiction to review this issue on appeal. Accordingly, I respectfully dissent.
I.
We review a district court’s denial of qualified immunity de novo. Logsdon v. Hains, 492 F.3d 334, 340 (6th Cir.2007). Qualified immunity is an affirmative defense that shields government officials performing discretionary functions “from liability for civil damages insofar as their conduct does not violate clearly established federal statutory ór constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); accord Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir.2008). To determine whether qualified immunity applies for particular state officials, we employ a two-step analysis. See Scott v. Harris, — U.S. -, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007). First, we must consider whether, “[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer’s conduct violated a constitutional right.” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). “If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.” Id. However, “if a violation could be made out on a favorable view of the parties’ submissions, the next, sequential step is to ask whether the right was clearly established.” Id. The ultimate focus of this second inquiry is to determine whether the official “had fair notice that her conduct was unlawful.” Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); see also Champion v. Outlook Nashville, Inc., 380 F.3d 893, 905 (6th Cir.2004) (requiring the plaintiff to provide “sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights”). If the law at the time of the official’s conduct “did not clearly establish that the [official’s] conduct would violate the Constitution, the [official] should not be subject to liability or, indeed, even the burdens of litigation.” Brosseau, 543 U.S. at 198, 125 S.Ct. 596.
Applying this qualified immunity framework to the facts of this case, I would find that Popp and Anderson are not entitled to qualified immunity on Kinkus’ First Amendment retaliatory prosecution claim. However, because there is a genuine issue *95 of material fact regarding whether Popp and Anderson had a retaliatory intent when filing their criminal complaint against Kinkus, I would reverse the district court’s grant of summary judgment in favor of Kinkus on this claim and remand the case for trial.
A.
“The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiffs allegations, if true, establish a constitutional violation.” Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Construing the facts in the light most favorable to Kinkus, I would find that he has sufficiently alleged that Popp and Anderson violated his First Amendment rights by filing the criminal complaint in retaliation for his vulgar comments to Popp on September 18, 2004 and his prior criticism of the Yorkville Police Department.
To demonstrate a retaliatory prosecution in violation of the First Amendment, a plaintiff must establish that: (1) he or she engaged in constitutionally protected activity; (2) the defendant brought criminal charges, for which there was an absence of probable cause, against the plaintiff; and (3) the defendant’s criminal prosecution of the plaintiff was motivated, at least in part, as a response to the plaintiffs exercise of his or her constitutional rights. See Hartman v. Moore, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 821 (6th Cir. 2007); Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc); Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998). When viewed in the light most favorable to Kinkus, the parties’ submissions establish each of these elements.
First, Kinkus’ vulgar comments to Popp on September 18, 2004 and his prior criticisms of the Yorkville Police Department clearly constitute protected speech under the First Amendment. It is well-established that “the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.” City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); see also id. at 462-63, 107 S.Ct. 2502 (“The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.”); McCurdy v. Montgomery County, 240 F.3d 512, 520 (6th Cir.2001) (“Since the day the ink dried on the Bill of Rights, ‘[t]he right of an American citizen to criticize public officials and policies ... is central to the meaning of the First Amendment.’ ” (quoting Glasson v. City of Louisville, 518 F.2d 899, 904 (6th Cir.1975))). This criticism need not be polite and is protected even if it employs mde and vulgar language. See Cohen v. California, 403 U.S. 15, 25-26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (finding that a state cannot criminalize the use of the expression “fuck the draft”); Barnes v. Wright, 449 F.3d 709, 718 (6th Cir.2006) (finding that the plaintiffs use of “strong” language, including words such as “damn”, when confronted by police officers, was constitutionally protected speech); Greene v. Barber, 310 F.3d 889, 895-96 (6th Cir. 2002) (finding that the plaintiffs characterization of police officer as an “asshole” and “stupid” was constitutionally protected speech); McCurdy, 240 F.3d at 520 (finding it “well-established that [the plaintiff] had a constitutional right to challenge verbally” a police officer’s authority by telling the officer that he didn’t have to do the “shit” that the officer was ordering him to do); Sandul v. Larion, 119 F.3d 1250, 1255 (6th Cir.1997) (finding that the plaintiffs *96 shouting of “fuck you” at abortion protestors was constitutionally protected speech).
Second, the criminal complaint filed against Kinkus lacked any vestige of probable cause. Probable cause for filing a criminal complaint only exists “if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.” Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); accord Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Logsdon, 492 F.3d at 341. The criminal complaint in this case charged Kinkus with violating Ohio Rev. Code § 2917.11(A)(2), by claiming that Kinkus:
Did recklessly cause inconvenience, annoyance, or alarm to another by making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person.
J.A. at 633. The Ohio Supreme Court, however, has clarified that Ohio Rev.Code § 2917.11(A)(2) only prohibits the use of “fighting words,” ie., those which “are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace.” State v. Hoffman, 57 Ohio St.2d 129, 387 N.E.2d 239, 242 (1979); accord State v. Dotson, 133 Ohio App.3d 299, 727 N.E.2d 957, 959 (1999); see also Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (establishing the now rather limited “fighting words” exception to the First Amendment’s broad protection of speech). No reasonable person considering the facts known to Popp and Anderson at the time they filed the criminal complaint would conclude that Kinkus’ abusive and vulgar comments constituted “fighting words.” Thus, as the state trial court accurately concluded, there was no probable case to support the filing of the disorderly conduct complaint against Kinkus.
Finally, unlike the majority,[8] I find that the parties’ pleadings reasonably suggest that Popp and Anderson filed the criminal complaint, at least in part, in retaliation for Kinkus’ constitutionally protected vulgar comments on September 18, 2004 and as possible retribution for his prior criticism of the Yorkville Police Department. Indeed, the record reflects that both Popp and Anderson were aware of and not happy about Kinkus’ prior criticisms of the police department and about Kinkus’ disrespectful comments during the flooding emergency on September 18, 2004. Moreover, the criminal complaint filed against Kinkus focused exclusively upon Kinkus’ vulgar speech as the basis for the disorderly conduct charge. See J.A. at 633 (accusing Kinkus of “recklessly causing] inconvenience, annoyance, or alarm to another by making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person” (emphasis added)). In light of *97 this history between the parties and the criminal complaint’s targeting of Kinkus’ protected speech, I would find that Kinkus has alleged facts, which, if true, demonstrate a violation of the First Amendment.
B.
The second question in the qualified immunity analysis is whether the rights allegedly violated were clearly established at the time of Popp and Anderson’s conduct. See Saucier, 533 U.S. at 201, 121 S.Ct. 2151. “This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.” Id.; accord Scott, 127 S.Ct. at 1774; see also Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (“[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.”). If the area of law “is one in which the result depends very much on the facts of each case,” it is likely that the right, considered in light of the specific context, will not be deemed “clearly established.” Brosseau, 543 U.S. at 201, 125 S.Ct. 596. In other words, for a right to be clearly established “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); accord Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003). “This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.” Anderson, 483 U.S. at 640, 107 S.Ct. 3034.
In the instant case, I would find that the First Amendment rights allegedly violated by Popp and Anderson were cleai’ly established at the time of their conduct. The First Amendment freedom to criticize police officials without fear of prosecution had been firmly established for several years prior to the filing of the criminal complaint against Kinkus in 2004. See, e.g., Hill, 482 U.S. at 461, 107 S.Ct. 2502 (“[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.”); Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949) (“[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger____That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless it is shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.”); McCurdy, 240 F.3d at 520 (“There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment.”); Barrett v. Harrington, 130 F.3d 246, 264 (6th Cir.1997) (“[I]t is well established that a public official’s retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983.”). Any reasonable police officer should have known that charging Kinkus with disorderly conduct in retaliation for his critical speech, as Popp and Anderson did in this case, would violate Kinkus’ First Amendment rights. Accordingly, I would hold that Popp and Anderson are not entitled to qualified immunity with respect to Kinkus’ retaliatory prosecution claim.
*98 C.
While I would reject Popp and Anderson’s requests for qualified immunity, I would nevertheless reverse the district court’s ultimate grant of summary judgment in favor of Kinkus on his retaliatory prosecution claim. A grant of summary judgment is proper only “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). In the instant case, however, there is a disputed issue of material fact regarding Kinkus’ retaliatory prosecution claim, namely Popp’s and Anderson’s intent in filing the disorderly conduct complaint. Kinkus alleges that this criminal complaint was retaliation for his criticism of the police. Popp and Anderson claim that the complaint was a legitimate response to the disorderly behavior of Kinkus during the flooding emergency. As disputes “involving proof a defendant’s intent seldom lend themselves to summary disposition,” Center for Bio-Ethical Reform, 477 F.3d at 823 (quoting Bloch, 156 F.3d at 682), I would reverse the district court’s grant of summary judgment to Kinkus on this claim and remand the case for trial so that a jury could resolve this disputed issue of material fact.
II.
In addition to my concerns about the majority’s qualified immunity analysis, I am disturbed by the majority’s decision to sua sponte pronounce a holding on an issue — whether the Village should be entitled to summary judgment on Kinkus’ municipal liability claim — that was not raised in Popp and Anderson’s notice of appeal nor properly asserted by them in their briefs.
Rule 3(c) of the Federal Rules of Appellate Procedure provides that a party’s “notice of appeal must ... designate the judgment, order, or part thereof being appealed.” Fed. R.App. P. 3(c)(1)(B). This rule, whose requirements are “jurisdictional in nature,” Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992); accord Torres v. Oakland Scavenger Co., 487 U.S. 312, 314-315, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), “limit[s] this Court’s appellate review to issues designated in the notice of appeal.” United States v. Glover, 242 F.3d 333, 335 (6th Cir.2001). In particular, “[i]f an appellant ... chooses to designate specific determinations in his notice of appeal — rather than simply appealing from the entire judgment — only the specified issues may be raised on appeal.” McLaurin v. Fischer, 768 F.2d 98, 102 (6th Cir.1985); accord United States v. Univ. Mgmt. Servs., Inc., 191 F.3d 750, 756 (6th Cir.1999) (Suhrheinrich, J.); Caldwell v. Moore, 968 F.2d 595, 598 (6th Cir.1992) (Suhrheinrich, J.) (“Under Rule 3(c)[,] where a notice of appeal specifies a particular order, only the specified issues related to that order may be raised on appeal.”).
In the instant case, Popp and Anderson’s notice of appeal states:
Notice is hereby given that Defendants James Popp (“Popp”) and Gary Anderson (“Anderson”) hereby appeal to the United States Court of Appeals for the Sixth Circuit from this Court’s final judgments 1) denying Popp and Anderson’s motion for summary judgment on the basis of qualified immunity entered in this action on [March 13, 2007] and 2) granting of Plaintiffs summary judgment on his First and Fourth Amendment claims, entered in this action on [September 28, 2006] and which became final when this Court denied Popp and Anderson’s motion for summary judgment on the basis of qualified *99 immunity on March 13, 2007 and was incorporated in the judgment entered on March 13, 2007.
J.A. at 55. While the notice does list the Village as a party to the appeal in its caption, it does not indicate that Defendants are appealing the district court’s ruling regarding the Village’s municipal liability. Rather, this notice clearly limits the appeal to the district court’s denial of Popp and Anderson’s motions for qualified immunity and its grant of summary judgment to Kinkus on his First and Fourth Amendment claims against them. Consequently, under our precedent, the issue of the Village’s municipal liability is not properly within our appellate jurisdiction for this case.
Even if we could construe the notice of appeal as permitting us to consider the issue of the Village’s municipal liability on appeal, I would still find the majority’s discussion of it to be improper because of Popp and Anderson’s failure to properly raise this issue in their arguments on appeal. This issue of the Village’s municipal liability was not raised in Popp and Anderson’s initial brief, but rather appeared for the first time in their reply to Kinkus’ response brief. Kinkus was never afforded an opportunity to defend the district court’s decision on this point and the issue was never discussed at oral argument. Under our longstanding precedent, such an issue-even if we had jurisdiction to consider it — should have been deemed waived. See, e.g., Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir.2008) (collecting cases); Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed.Cir.2002) (“Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief — they do not provide the moving party with a new opportunity to present yet another issue for the court’s consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.”). Moreover, it is not clear that Popp or Anderson even have standing to raise such an issue as it concerns the liability of the Village, as opposed to their own individual liability, for the alleged infringement upon Kinkus’ constitutional rights. Accordingly, I would not express any opinion with respect to this issue and would leave intact the district court’s summary judgment decision regarding the Village’s municipal liability.
III.
For the foregoing reasons, I respectfully dissent.

. The majority’s analysis of this issue is misguided, particularly with respect to the majority's conclusion that there was no retaliatory animus on the part of Popp and Anderson because the allegations in the criminal complaint are true. See Majority Op. at 93. Whether the charges in the complaint are true is irrelevant to whether the complaint was filed for a retaliatory purpose. Indeed, accepting the truth of the charges in the complaint only confirms that Popp and Anderson were likely filing the complaint in retaliation for Kinkus' vulgar comments on the night of the flooding. That the complaint targets Kinkus' offensive, but constitutionally protected, speech does not undermine, but rather affirms Kinkus’ contention that the filing of the complaint was motivated by his exercise of First Amendment rights.