CALLAHAN, Circuit Judge,
dissenting:
I dissent because the majority’s opinion fails to follow Supreme Court guidance in *1197 determining first that the police officers’ decision to book Ford instead of issuing a ticket violated his constitutional rights, and second that Ford’s “right” was clearly established. On the first point, the majority fails to appreciate that the scope of a person’s right to speech is different after he or she has been detained. This leads to the majority’s failure to discern that our prior cases on retaliatory police action, even if not cabined by subsequent Supreme Court decisions, do not create a clearly established right forbidding an officer from considering the comments of a legally detained individual when determining whether to book the individual.
I. Introduction
This case raises an issue of first impression. It is not a case of retaliatory arrest. Nonetheless, our review is informed by cases suggesting that, in order to state a claim for retaliatory arrest, a plaintiff must show a lack of probable cause for the arrest. See Reichle v. Howards, — U.S. -, —, 132 S.Ct. 2088, 2095, 182 L.Ed.2d 985 (2012) (noting that evidence of probable cause “could be thought similarly fatal to a plaintiffs claim that animus caused his arrest, given that retaliatory arrest cases also present a tenuous causal connection between the defendant’s alleged animus and the plaintiffs injury”). But see Skoog v. Cnty. of Clackamas, 469 F.3d 1221, 1232 (9th Cir.2006) (noting “that a plaintiff need not plead the absence of probable cause in order to state a claim for retaliation”). The police had probable cause to arrest Ford for violating the city noise ordinance and he does not argue otherwise. See Majority at 12. Also, although Ford was prosecuted in the Yakima Municipal Court for violating the city noise ordinance and found not guilty of the charges, he does not assert a claim of retaliatory prosecution. See Hartman v. Moore, 547 U.S. 250, 266-67, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (holding that a plaintiff must show a lack of probable cause to state a claim for retaliatory prosecution). Instead, Ford seeks monetary damages in an action under 42 U.S.C. § 1983 based on the assertion that the police officers violated his constitutional rights when, after detaining him for violating the city noise ordinance, they decided to book him based, in part, on his post-detention statements, rather than just issuing a ticket.
Ford’s asserted claim of a violation of his constitutional rights, and the majority’s treatment of it, raises several major concerns. Initially and critically, the majority assumes, incorrectly, that Ford’s arrest did not affect the scope of his First Amendment right to free speech. Consequently, the majority fails to appreciate that a plaintiff asserting that he was booked instead of ticketed in retaliation for his post-detention statements must show a lack of probable cause for his booking. Here, this prerequisite for relief bars Ford from prevailing for two reasons. First, he has not claimed that the officers lacked probable cause to book him. Second, the district court’s unchallenged determination that Ford’s exercise of his right of free speech was not the but-for cause of his booking establishes that there was probable cause to book Ford.
II. Ford Has Not Shown A Violation of His First Amendment Rights
A. Lawful Detention Curtails An Individual’s Rights Under the First Amendment
I agree with the majority that the “First Amendment protects a significant amount of verbal criticism and challenge directed at police officers,” City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), and that police officers “must respect the right of individuals in [the] community to question their govern *1198 ment and the role of the police,” Mackinney v. Nielsen, 69 F.3d 1002, 1007 (9th Cir.1995). However, here we are concerned not with speech that might give rise to an arrest, but with speech made after a person has been lawfully detained. This is a critical distinction. It is well settled that once an individual is lawfully detained, his or her rights may be restricted for legitimate penological and custodial reasons. See Bell v. Wolfish, 441 U.S. 520, 546, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (stating that “[a] detainee simply does not possess the full range of freedoms of an unincarcerated individual”);[1] see also Bull v. City & Cnty. of San Francisco, 595 F.3d 964, (9th Cir.2010) (en banc) (upholding strip searchers of arrestees). Obviously, a detained person is not free to leave. Similarly, a detained person’s speech may be relevant to the restraints placed on him and his conditions of confinement. In other words, what a person says after he or she is lawfully detained may be, and perhaps must be, considered by police officers. Other than to state that it disagrees, the majority does not address this reality.
The scope of a detained person’s First Amendment rights is particularly germane in the context of the defendant officers deciding whether to book or ticket Ford. Washington law provides that an officer making this decision should consider “whether detention appears reasonably necessary to prevent imminent bodily harm to himself, herself, or another, or injury to property, or breach of the peace.” Wash. CrRLJ 2.1(b)(ii). This consideration appears to be constitutional and is eminently reasonable. We would not want a peace officer to release an individual when the officer has reason to believe that the individual will harm “himself, herself, or another, or [injure] property, or breach [ ] the peace.” Moreover, among the most ' relevant evidence for such a determination will be the individual’s statements. Indeed, here the officer explained that his decision to detain Ford was based on Ford’s “mouth and [his] attitude.” In explaining his decision to detain Ford, the officer cited concerns for public safety as well as Ford’s failure to listen, failure to act civilly, failure to take responsibility for his actions, and disrespectful behavior toward law enforcement. Thus, both as a matter of common sense and state law, the defendant officers were allowed to consider Ford’s post-detention statements in deciding whether to ticket or book him.
B. Ford’s Claim of Retaliation Based on His Post-Detention Statements Requires a Showing of the Absence of Probable Cause for the Booking
The interplay between the officer’s need to determine a detained person’s dangerousness and proclivity to commit further breaches of peace, and the person’s right to speech under the First Amendment, distinguishes this case from the cases the majority cites and directs how we should review Ford’s allegations. Skoog alleged that the defendants searched his office and seized materials in retaliation for Skoog having filed a lawsuit. Skoog, 469 F.3d at 1227. In Duran v. City of Douglas, 904 F.2d 1372 (9th Cir.1990), the plaintiffs alleged that defendants had unlawfully ar *1199 rested them based on one of them making obscene gestures at the police from their car. Id. at 1374-75. In Lacey v. Maricopa County, 693 F.3d 896 (9th Cir.2012) (en banc), the plaintiff alleged that defendants violated his First Amendment rights by investigating and arresting him in retaliation for articles he published. Id. at 916. In each case, the actions taken against the plaintiffs were allegedly taken against them based on their exercising their rights as private citizens. Thus, the statement in Skoog, 469 F.3d at 1235, that an individual has a right “to be free from police action motivated by retaliatory animus but for which there was probable cause” did not purport to cover a situation where a defendant’s constitutional rights are already circumscribed by his lawful detention. Indeed, in Duran the court noted that there are “well-defined limits on what police officers may do in discharging their duties,” and that “[p]erhaps the most fundamental of these is the requirement that the police not interfere with the freedom of private persons unless it be for specific, legitimate reasons.” 904 F.2d at 1376. Here, Ford’s charges against the officers concern not interference “with the freedom of private persons,” but rather the officers’ reactions to Ford’s comments after he was legally detained.
1. Ford must show a lack of probable cause for his booking '
Accordingly, Ford’s case is analogous to the situation presented in Reichle, where the Supreme Court noted that “the right in question is not the general rule to be free from retaliation for one’s speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause.” 132 S.Ct. at 2094. The Court held that it “has never held that there is such a right.” Id. Similarly, Ford has no right not to be booked based on his post-detention statements where the booking is supported by probable cause.
In Reichle, the Court noted that evidence of probable cause “could be thought similarly fatal to a plaintiffs claim that animus caused his arrest, given that retaliatory arrest cases also present a tenuous causal connection between defendant’s alleged animus and the plaintiffs injury.” Id. at 2095. The Court commented:
An officer might bear animus toward the content of a suspect’s speech. But the officer may decide to arrest the suspect because his speech provides evidence of a crime or suggests a potential threat.... Like retaliatory prosecution cases, then, the connection between alleged animus and injury may be weakened in the arrest context by a police officer’s wholly legitimate consideration of speech.
Id. at 2095-96 (internal citation omitted). The Supreme Court expressed a preference for requiring the showing of the absence of probable cause and approvingly cited decisions by other circuit courts requiring a showing of a lack of probable cause.[2] Id. at 2096.
Recognition of the officers’ “wholly legitimate consideration of speech” by a lawfully detained individual, such as Ford, *1200 changes fundamentally the nature of a court’s inquiry. Asking whether an officer’s “acts would chill or silence a person of ordinary firmness from future First Amendment activities,” Majority at 11 (quoting Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999)), assumes that a detained individual has a constitutional right to say whatever he wants while he is detained, without any adverse consequences. As shown, this is not true. Thus, the majority’s application of Mendocino to this case ignores ,the crucial distinction between what an individual may be arrested for and the necessary consequences of statements by an individual after he has been detained.
Rather than focus on whether an officer’s action had a chilling effect on the plaintiff, the proper inquiry under cases such as Reichle is whether the officer had probable cause to book the detained individual in light of his statements. In other words, did Ford’s post-detention statements give the officers reason to believe that Ford might harm himself or others, injure property, or breach the peace?
In making this inquiry, we should keep in mind our statement in Duran that:
A police officer’s duties are both difficult and dangerous. Circumstances on the beat often require immediate action in order to prevent serious harm to persons or property; rarely is there time for brushing up on the Supreme Court’s latest pronouncements on warrant requirements, probable cause or reasonable suspicion. Thus, police officers “generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This is an objective standard, Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), that leaves “ample room for mistaken judgments.” Malley v. Briggs, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
904 F.2d at 1376 (parallel citations omitted).
Critically, as Reichle suggests, focusing on whether the officer had legitimate reasons under Washington law for booking Ford casts a different light on causation. Were the officer’s statements to Ford truly intended to punish Ford for his comments, or were they efforts to elicit a changed perspective on Ford’s part that would allow the officer to release Ford? Several of the officer’s comments that the majority cites can be interpreted as indicating that the officer sought to give Ford an opportunity to change his attitude.[3] If the officer’s motive was not to chill Ford’s First Amendment rights, causation becomes problematic.[4] In Hartman, the Supreme Court noted:
*1201 It is clear, moreover, that the causation is understood to be but-for causation, without which the adverse action would not have been taken; we say that upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of (such as firing the employee). See Mt. Healthy [City Sch. Dist. Bd. of Educ. v. Doyle ], 429 U.S. [274,] 287 [97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ]. If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official’s mind. See ibid. It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway. See Crawford-El [v. Britton, 523 U.S. 574,] 593 [118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ]; Mt. Healthy, supra, at 285-286 [97 S.Ct. 568].
547 U.S. at 260, 126 S.Ct. 1695 (parallel citations omitted).
The need to establish causation, when coupled with the recognition that an officer’s duties are “difficult and dangerous” and “often require immediate action,” Duran, 904 F.2d at 1376, support requiring that a plaintiff plead and prove an absence of probable cause when claiming a retaliatory booking based on statements made after he was laivfully detained. Otherwise, officers may face lawsuits and liability for retaliation even when they have probable cause to book the detainee. If the officer has probable cause to book a detained individual based, in part, on the person’s post-detention actions or statements, there is no causation; and thus, there is no cause of action for violation of a constitutional right. See Hartman, 547 U.S. at 260, 126 S.Ct. 1695.
The reasons underlying the Supreme Court’s opinion in Reichle also require a showing of a lack of probable cause in a § 1983 action based on the plaintiffs post-detention speech. Ford’s claim of retaliation presents a “tenuous causal connection between the defendant’s alleged animus and the plaintiffs injury” similar to that presented in retaliatory prosecution and arrest cases. First and foremost, Reichle concerned alleged retaliation based on the acts of a free private person, while Ford objects to the officers’ reaction to his statements made while he was legally detained. In Reichle, the Supreme Court noted that “evidence of the presence or absence of probable cause for the arrest will be available in virtually every retaliatory arrest case.” Id. at 2095. However, this is not true where the allegation is that an officer violated a person’s constitutional right by exercising the option of booking the individual rather than issuing a ticket. Unlike determinations of whether there is probable cause for an arrest or to prosecute, there usually is no reason to marshal the evidence supporting the officer’s decision to detain rather than to ticket an individual until and unless the individual files a § 1983 action. Even where, as here, there is a video of the arrest and detention, this does not encompass all the *1202 information the officers received and considered in making their decision. Moreover, unlike probable cause for an arrest or for prosecution, for which there is considerable case law, there is little judicial guidance on how to evaluate an officer’s decision to book a lawfully detained individual. Thus, requiring the pleading and proving of a lack of probable cause is necessary to shield officers from being second guessed in civil actions brought by those they lawfully detained. See Messerschmidt v. Millender, — U.S. -, -, 132 S.Ct. 1235, 1244-45, 182 L.Ed.2d 47 (2012) (stating that qualified immunity “protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,” should provide “government officials breathing room to make reasonable but mistaken judgments,” and should protect “all but the plainly incompetent or those who knowingly violate the law”).
2. Because the District Court found there was probable cause for booking Ford, it properly granted judgment for defendants.
Even if Ford were not required to show a lack of probable cause for his booking, the district court’s finding of probable cause — which the majority does not really address — supports, nay compels, the district court’s grant of summary judgment for the officers. The district court on cross-motions for summary judgment determined that the totality of the circumstances led the officer “to reasonably conclude booking was warranted.” The court concluded that the booking “was not retaliatory” and that “no rational jury could conclude [Ford’s] exercise of his right of free speech was the ‘but-for cause’ of his booking.”
Although the court in Skoog stated that “a plaintiff need not plead the absence of probable cause in order to state a claim for retaliation,” 469 F.3d at 1232, it also stated that “Skoog must ultimately prove that Royster’s desire to cause the chilling effect was a but-for cause of the defendant’s action.” Id. Thus, even if the statement in Skoog that a plaintiff need not plead the absence of probable cause survives the Supreme Court’s statement in Reichle that it “has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause,” 132 S.Ct. at 2093, here, the district court’s finding that the officers’ “desire to cause the chilling effect” was not a “but-for cause” of Ford’s booking terminates the case, even under Skoog.
Once the case was submitted to the district court on cross-motions for summary judgment, the facts were no longer “[t]aken in the light most favorable to Ford.” Majority at 13. Rather, the district court’s finding of no “but-for cause” should be affirmed unless Ford can show that the findings are clearly erroneous. See United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); see also United States v. Hinkson, 585 F.3d 1247, 1260-61 (9th Cir.2009) (en banc).[5]
*1203 III. The Right Perceived By The Majority Is Not Clearly Established
Even if I were to agree with the majority that Ford had a constitutional right not to have the officers consider his comments while he was detained, which I do not, I could not agree that this right was “clearly established.” That is to say, the officers were not on notice that deciding to book Ford based, in part, on his comments while detained, violated his rights under the First Amendment.
The Supreme Court has not been chary of reminding us that a clearly established right cannot be established at a high level of generality. In Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), the Supreme Court specifically stated “We have repeatedly told courts — and the Ninth Circuit in particular — not to define clearly established law at a high level of generality.” Id. at 2084 (internal citation omitted); see also Brosseau v. Haugen, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (concluding that the Ninth Circuit erred in defining the right at issue at “a high level of generality”).
This is precisely what the majority does here. It takes Skoog, which concerns a retaliatory arrest based on a free private person’s action, and applies it to an action alleging an unconstitutional booking based, in part, on the plaintiffs statements while legally detained. This stretched application of Skoog is inconsistent with the Supreme Court’s caution that “[t]he general proposition ... that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.” al-Kidd, 131 S.Ct. at 2084. Furthermore, Skoog, which is not a Supreme Court opinion and was decided only eight months before Ford’s detention, is itself equivocal as to what it “established.” The court concluded that the right it found was not clearly established at the time of the search, and further commented that “[a]t some future point, this right will become clearly established in this Circuit.” 469 F.3d at 1235. Thus, the extent to which Skoog itself clearly established a cause of action for alleged police retaliation despite the presence of probable cause for the officer’s action is doubtful. The clarity of this rule is further muddied by the spirit, if not the holding, of the Supreme Court’s subsequent opinion in Reichle, 132 S.Ct. 2088.
The test for determining that a right is clearly established requires much more. The Supreme Court has explained:
[Cjlearly established for purposes of qualified immunity means that [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
Wilson v. Layne, 526 U.S. 603, 614-15, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotation marks and citation omitted). Here, while the officer’s subjective intent is not controlling, it is clear that Officer Urlacher reasonably did not think that he was violating any of Ford’s constitutional rights.[6] More importantly, there is no “pre-existing law” to inform the officers *1204 that Ford, once detained, could not talk himself into jail.
The majority states that police officers have been on notice since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech. Majority at 1415. But all of the cases on which the majority relies concerned actions to arrest or to search based on individuals actions as free private persons.[7] Had the officers initially detained Ford based on his speech, the majority’s broad axiom might apply. But that is not what Ford alleges. He alleges only that the officers decided to book him instead of giving him a ticket based on what he said after he was legally detained. Moreover, as the majority recognizes, under Washington law, the officers were required to consider Ford’s post-detention statements in determining whether to ticket or book him. The officers were aware of this requirement of Washington law and cited it as one of the reasons leading them to book Ford. See Majority at 12. The majority has not cited, nor am I aware of any, case law that addresses an officer’s consideration of a detained individual’s statements when determining whether to book the individual. Indeed, it seems self-evident that an officer is required to consider some statements by a detained person such as those relating to medical condition, health, fear of assault from others, and threats, in determining how to process the individual.[8] Because an officer’s use of a detained person’s statements raise substantially different considerations from an officer’s reactions to the statements of a free person, the cases cited by the majority did not reasonably put the officers on notice that in telling Ford that he had talked himself into jail, they were chilling Ford’s constitutionally protected right to free speech. If we are going to impose such etiquette upon peace officers, we must first clearly so hold, and not expect them to glean such a “vague” constitutional rule from Ninth Circuit cases that appear to be out of step, if not inconsistent, with recent Supreme Court decisions.[9]
*1205 IV. Conclusion
In sum, we have wandered far from our limited role as an appellate court. First, we should have affirmed the district court because Ford has not shown that the court’s determination that chilling his speech was not the “but for cause” of his booking. Second, we should have recognized that there is no “pre-existing law” that fairly informed the officers that they could not consider the statements Ford made while he was legally detained in deciding to book him, and affirmed the district court pursuant to the second prong of the Saucier test. Finally, I disagree with the majority’s assertion that Ford may assert a claim for retaliatory booking based on the statements he made while legally detained without showing an absence of probable cause for his booking. As in this case, police officers are often called upon to make decisions concerning the protection of themselves and the public on the street and in the middle of the night. We should not espouse a standard that may subject an officer to personal liability because years after the event a court decides that the officer may have had an improper motive — as well as probable cause — for the action he took. Accordingly, I dissent.

. The Supreme Court explained that although "prison inmates retain certain constitutional rights ... [IJawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.” Bell, 441 U.S. at 545-46, 99 S.Ct. 1861 (internal quotation marks and citations omitted). The Court also commented that it had held "that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.” Id. at 547, 99 S.Ct. 1861.

. The Supreme Court noted that for qualified immunity purposes, "it was at least arguable" that Hartman s rule requiring a lack of probable cause extended to retaliatory arrests. Id. at 2096. It then commented:
Decisions from other Federal Courts of Appeals in the wake of Hartman support this assessment. Shortly before Howards’ arrest, the Sixth Circuit held that Hartman required a plaintiff alleging a retaliatory arrest to show that the defendant officer lacked probable cause. See Barnes v. Wright, 449 F.3d 709, 720 (2006) (reasoning that the Hartman "rule sweeps broadly”). That court’s treatment of Hartman confirms that the inapplicability of Hartman to arrests would not have been clear to a reasonable officer when Howards was arrested. *1200 Moreover, since Howards' arrest, additional Courts of Appeals have concluded that Hartman s no-probable-cause requirement extends to retaliatory arrests. See, e.g., McCabe v. Parker, 608 F.3d 1068, 1075 (C.A.8 2010); Phillips v. Irvin, 222 Fed. Appx. 928, 929 (C.A.11 2007) (per curiam). As we have previously observed, "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking tire losing side of the controversy.” Wilson v. Layne, 526 U.S. 603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).
Reichle, 132 S.Ct. at 2096 (parallel citations omitted).

. For example, the majority notes that the officer stated: “He might only get a ticket if he cooperates. But with that attitude, he’s going to get cuffed”; "I don't know if I'm going to book him yet. I’ll see if he's going to shut up”; and "If he shuts up, I'll let him go with a ticket.” Majority at 5.

. The majority takes issue with what it de *1201 scribes as this "nuanced view of the officer's statement.” Majority at 13 n. 3. It posits that there is little practical difference between an officer "punishing” Ford and providing him an "opportunity” to avoid detention. I disagree. Because the officer was required to consider Ford’s post-detention statements in determining whether to book him, the officer should not be found liable in a § 1983 action unless there is a lack of probable cause for the detention and clearly established constitutional limitations on his consideration of Ford's statements.

. In Hinlcson, we reiterated the Supreme Court’s statement that "a finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” 583 F.3d at 1260 (quoting U.S. Gypsum, 333 U.S. at 395, 68 S.Ct. 525). We further commented that:
the scope of our review limits us to determining whether the trial court reached a decision that falls within any of the permissible choices the court could have made. In other words, the Supreme Court’s precedent convinces us that any “definite and firm conviction” of the reviewing court must still include some measure of defer *1203 ence to the trial court’s factual determinations.
Id. at 1261.

. This conclusion is implicit in the officer’s statement to Ford that "but you talked yourself into this on video. It's all well recorded.” See Majority at 1191.

. As previously noted, in Duran, 904 F.2d 1372, the plaintiffs were arrested after one of them made obscene gestures at the police from their car. Id. at 1374-75. In Beck v. City of Upland, 527 F.3d 853 (9th Cir.2008), the plaintiff alleged that he was arrested because of his protected speech challenging his treatment by the city. Id. at 856-57. Neither of these cases, nor Skoog, 469 F.3d 1221, appear on its face to have any application to an officer’s determination that a detained individual should be booked, rather than ticketed, in part because of his statements while detained.

. The majority recognizes that the officer was required to consider Ford’s comments, but asserts, apparently as a factual matter, that Ford said nothing that would allow the officer to book him. See Majority at 10 n. 1, 16-17. The officer, of cqurse, thought otherwise. Thus, over five years after the event, the officer now faces liability because two appellate judges disagree with his assessment of the situation. This further illustrates the importance of requiring a showing of no probable cause. If, as the district court found, there was probable cause to book Ford, that should be the end of the matter.

. If nothing else, perhaps the majority’s opinion and this dissent illustrate the wisdom of the Supreme Court’s decision in Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), of allowing courts to address the second prong of the Saucier test when the constitutional question under the first prong is more difficult. Moreover, I fear that in failing to heed the Supreme Court's advice to “think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case,” al-Kidd, 131 S.Ct. at 2080 (internal quotation marks and citations omitted), we have demonstrated its wisdom.