NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4353
_____

CHARLOTTE BERGDOLL,

Appellant

v.

CITY OF YORK;
THE HONORABLE JOHN S. BRENNER, Mayor,
Individually and as Mayor for the City of York;
MARK L. WHITMAN, Individually and as
Police Commissioner for the City of York;
WESLEY KAHLEY, Individually and as
Police Captain of Operations for the City of York;
POLICE OFFICER A. BAEZ, Badge Number 192,
Individually and as a Police Officer for the City of York;
THE COUNTY OF YORK;
H. STANLEY REBERT, Individually and as
District Attorney for the County of York
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-08-cv-01879)
District Judge:  Honorable A. Richard Caputo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 11, 2013

Before:  RENDELL, FISHER and JORDAN, *Circuit Judges*.

(Filed: March 15, 2013)

1

—————

OPINION OF THE COURT
—————

FISHER, *Circuit Judge*.

In this civil rights action under 42 U.S.C § 1983, plaintiff Charlotte Bergdoll appeals from the District Court's grant of summary judgment to York City Police Officer Andrew Baez, the County of York, the City of York, and various city and county officials. We will affirm.

I.

Because we write principally for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts that are necessary to our analysis.

On October 12, 2006, Officer Andrew Baez responded to a dispatch call to check on the welfare of children living at 745 West Poplar Street in York, Pennsylvania. When he arrived at the residence, Officer Baez met the tenant, a woman named Cassandra Whitted. A short time later, Charlotte Bergdoll, who worked for Cherry Lane Realty as the manager of the property, arrived at the residence.

The parties present different accounts of what happened next. At his deposition, Officer Baez testified that Bergdoll started yelling and directing profanities at him and Whitted, and that he then told Bergdoll that she had to leave the residence. Bergdoll denies using profanity but does admit that she questioned why Officer Baez was

2

investigating housing codes issues and asked him whom he was "screwing." Officer Baez then told Bergdoll that she was under arrest. Bergdoll claims that she immediately stopped and put her hands behind her back in order to be handcuffed, but that Officer Baez then pushed her to the ground and kneeled on top of her back while she screamed for help. Officer Baez testified that Bergdoll pulled away from him while he was leading her onto the property's porch, that she resisted arrest while the two struggled on the porch, and that he finally had to put Bergdoll to the ground and call for back-up while Bergdoll continued to scream and resist. In any event, after a second officer arrived on the scene, Bergdoll was arrested and charged with disorderly conduct.

At the police station, Bergdoll filed a private citizen complaint against Officer Baez, which was investigated by William Follmer of the York City Police Department Internal Affairs Department. After Folmer left Internal Affairs, the file was reviewed by Philip Roberts, who testified at his deposition that there was nothing in Officer Baez's history that would have alerted anyone to his being prone to the use of excessive force or to violating citizens' rights.

Assistant District Attorney Laurence Stone was assigned by District Attorney H. Stanley Rebert to handle Bergdoll's trial for disorderly conduct. Bergdoll was eventually tried and acquitted of the disorderly conduct charge. Stone testified at his deposition that he had not been specifically instructed by the District Attorney's office as to how to handle the case and that his decision not to drop the charges against Bergdoll was an exercise of his own discretion.

On October 10, 2008, Bergdoll brought the present lawsuit against Officer Baez, the City of York, the County of York, Police Commissioner Mark Whitman, and Police Captain of Operations Wesley Kahley. In her amended complaint, Bergdoll alleged, under § 1983, violations of her First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, along with related state law claims.[1] On April 27, 2011, the District Court granted summary judgment to all defendants except Officer Baez on all of Bergdoll's claims, and to Officer Baez on all claims but Bergdoll's allegation of excessive force under the Fourth Amendment. *Bergdoll v. City of York*, No. 3:08-CV-1879, 2011 WL 1601605, at *10 (M.D. Pa. Apr. 27, 2011). The remaining claim proceeded to a jury trial, and on November 3, 2011, the jury returned a verdict in favor of Officer Baez.

Bergdoll's timely appeal to this Court followed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291. We review *de novo* a district court's decision to grant a motion for summary judgment. *Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). We must view the facts in the light most favorable to the

---

[1] On appeal, Bergdoll does not challenge the District Court's grant of summary judgment to defendants on her state law claims.

non-moving party, who is entitled to "all reasonable inferences from the record." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012).

## III.

## A.

We first consider Bergdoll's claims against Officer Baez. Bergdoll argues that the District Court erred when it granted summary judgment to Officer Baez on qualified immunity grounds on Bergdoll's claims under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.[2] We disagree.

## 1.

The District Court properly granted summary judgment to Officer Baez on Bergdoll's claims of Fourth Amendment false arrest. To prevail on a claim of false arrest under § 1983, a plaintiff must show that she was arrested without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *accord Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense

---

[2] The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Because we hold that Officer Baez did not violate Bergdoll's constitutional rights, we need not consider whether those rights were "clearly established." *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

but whether the arresting officers had probable cause to believe the person arrested had committed the offense.").  Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."  *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). The validity of an arrest is determined by the law of the state where the arrest occurred. *Id.*

The record supports the District Court's conclusion that Officer Baez had probable cause to arrest Bergdoll for disorderly conduct.[3]  Although Bergdoll denies using profanity during her encounter with Officer Baez, she does admit that her arrest followed a "period of arguing" during which Bergdoll questioned Officer Baez as to whom he was "screwing."  We agree with the District Court that given the situation and Bergdoll's

---

[3] In Pennsylvania, "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."  18 Pa. Cons. Stat. § 5503(a) (2012).

"hostile and confrontational language," *Bergdoll*, 2011 WL 1601605, at \*5, Officer Baez

had probable cause to arrest Bergdoll for disorderly conduct.[4]

2.

The District Court also properly granted summary judgment to Officer Baez on

Bergdoll's claim of First Amendment retaliation. In order to prevail on such a claim, a

plaintiff must prove "(1) that he engaged in constitutionally-protected activity; (2) that

the government responded with retaliation; and (3) that the protected activity caused the

retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). "[U]pon a

prima facie showing of retaliatory harm, the burden shifts to the defendant official to

demonstrate that even without the impetus to retaliate he would have taken the action

complained of." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).

Bergdoll argues that her statements regarding "the police role in codes issues,"

combined with Officer Baez's "personal ill-will" toward her, resulted in her retaliatory

arrest on disorderly conduct charges. But as the District Court correctly held, Bergdoll's

claim fails because she cannot show that her speech was the but-for cause of her arrest.

Although her speech was protected and she was arrested a short time after making her

---

[4] Our judgment is based on the totality of the circumstances and not solely on the obviously offensive and insulting question to Officer Baez about whom he was 'screwing.' Because the District Court did not err in holding that Officer Baez had probable cause, Bergdoll's claim for malicious prosecution also fails. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) ("To prove malicious prosecution under § 1983, a plaintiff must show that . . . the proceeding was initiated without probable cause . . . .").

7

remarks, the record supports the District Court's conclusion that it was Bergdoll's "aggressive and confrontational behavior," *Bergdoll*, 2011 WL 1601605, at *6, not her speech, that prompted her arrest.

3.

Nor did the District Court err in granting summary judgment to Officer Baez on Bergdoll's claims under the Due Process Clauses of the Fifth and Fourteenth Amendments. As the District Court noted, Bergdoll's Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment only applies to federal officials, and Officer Baez is a state official. *See*, *e.g.*, *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983). Bergdoll's Fourteenth Amendment substantive due process claim fails because her claims of excessive force, false arrest, and malicious prosecution are cognizable under the Fourth Amendment, and "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). *See id.* at 268-69 ("Although not all actions by police officers are governed by the Fourth Amendment, . . .

the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis.").[5]

4.

We also reject Bergdoll's claim that Officer Baez's actions violated her rights under the Eighth Amendment. Bergdoll accurately quotes our decision in *Howell v. Cataldi* for the proposition that police conduct that "exceeds that which is reasonable and necessary under the circumstances, and also violates standards of decency more or less universally accepted" can give rise to an Eighth Amendment claim under § 1983. 464 F.2d 272, 282 (3d Cir. 1972) (internal quotation marks omitted). But the Eighth Amendment only serves as a "primary source of substantive protection" after conviction, *Graham v. Connor*, 490 U.S. 386, 395 (1989), and the conduct complained of by Bergdoll occurred prior to and during her arrest. *See also Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("[T]he Eighth Amendment's Cruel and Unusual Punishments

---

[5] Bergdoll also asserts that her Fifth Amendment right against self-incrimination was violated when her "statements prior to, during, and after her arrest, as well as information gathered from the citizen's complaint she filed" were used in connection with her trial for disorderly conduct. But Bergdoll offers no evidence that her statements prior to and during her arrest, or those taken from her citizen's complaint, were "compelled" within the meaning of the Self-Incrimination Clause. *See* U.S. Const., amend. V ("No person shall be . . . compelled in any criminal case to be a witness against himself . . . ."). Nor does Bergdoll offer any evidence of any compelled statements that were used against her in any criminal or civil proceedings. *See Chavez v. Martinez*, 538 U.S. 760, 776 (2003) (finding no constitutional violation where plaintiff was interrogated after being shot during altercation with police, but he was never charged with a crime and his statements were never used against him in any criminal proceeding).

9

Clause does not apply until 'after sentence and conviction.'" (quoting *Graham*, 490 U.S. at 392 n.6)).

B.

Bergdoll also argues that the District Court erred when it granted summary judgment to the County, the City, Whitman, and Kahley. We disagree.

1.

As the District Court found, Bergdoll's allegations against the County can be read as asserting two basic claims: first, that the County is responsible for the actions of Officer Baez, and second, that the County violated Bergdoll's rights by establishing a policy of ignoring citizen complaints against the police department. Neither claim has any merit.

Although municipalities such as the County qualify as "persons" under § 1983, they cannot be held liable for their employees' actions on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff seeking relief from a municipality under § 1983 must identify a particular "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," and show that the policy in question directly led to the complained-of injury. *Id.* at 694.

Bergdoll's first claim against the County – that it bears responsibility for the actions of Officer Baez – fails for two reasons. First, Bergdoll has offered no evidence of any policy or custom on the part of the County that led to her injury. Second, even if

10

Bergdoll could make such a showing, her claim of *Monell* liability would still fail because, as outlined above, Officer Baez's actions did not violate any of Bergdoll's constitutional rights.[6] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when . . . the officer inflicted no constitutional harm.").

Bergdoll's second claim against the County – that it violated her rights by establishing a policy of ignoring citizen complaints against the police department – fails because, as the District Court found, Bergdoll offers no evidence that the District Attorney's office improperly ignored her citizen complaint, much less that they had a policy of doing so.

2.

Bergdoll argues that the City bears responsibility for the alleged constitutional violations committed by Officer Baez because it had a "policy of not properly investigating citizen complaints, formal and informal, and failing to reprimand and discipline officers involved in abuse." Appellant's Br. at 12. As for Whitman and Kahley, Bergdoll claims that the two men qualify as "policymakers" under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), and therefore bear liability for her constitutional

---

[6] To the extent that Bergdoll's opening brief can also be read to challenge the jury's verdict in favor of Officer Baez on Bergdoll's claim of excessive force, we reject any such challenge because Bergdoll has failed to present any evidence calling the verdict into question.

11

injuries, because "Kahley had final decision-making authority regarding the outcome of citizen complaints and [Whitman] was the final authority for all police department issues." Appellant's Br. at 7. Therefore, Bergdoll argues, Whitman and Kahley bear responsibility for the City's alleged violation of her "rights to a fair and judicious citizen complaint procedure and to be heard and have the brutality she experienced examined." *Id.* at 16.

After reviewing the record, we agree with the District Court that Bergdoll has failed to present evidence to support her claims. Bergdoll's allegations against the City based on the actions of Officer Baez fail for two reasons: first, because Officer Baez did not violate any of Bergdoll's constitutional rights, *see Heller*, 475 U.S. at 799; and second, because Bergdoll has not presented any evidence that the City was deliberately indifferent in its training of Officer Baez in proper police procedure, *see City of Canton v. Harris*, 489 U.S. 378, 392 (1989). As for Bergdoll's claims against Whitman and Kahley, the record supports the District Court's conclusion that Bergdoll failed to present evidence that the men were policymakers under *Pembaur* or, in any event, that any of Bergdoll's constitutional rights were violated.

## IV.

For the reasons set forth above, we will affirm the order of the District Court.